**GENSPLIT FINANCE CORPORATION, Plaintiff,**

**v.**

**FOREIGN CREDIT INSURANCE ASSOCIATION, Defendant.**

**No. 85–C–886.**

United States District Court, E.D. Wisconsin.

Sept. 6, 1985.

Dean P. Laing, Smith & O'Neil, S.C., Milwaukee, Wis., for plaintiff.

Carol S. Josten, Godfrey & Kahn, S.C., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

The plaintiff, Gensplit Finance Corporation ("Gensplit"), has filed a motion to remand this action to the Circuit Court of Milwaukee County, State of Wisconsin, from which it was removed on June 11, 1985, by the defendant, Foreign Credit Insurance Association ("FCIA"). FCIA not only opposes Gensplit's motion to remand but has filed its own motion to transfer this case to the United States District Court for the Southern District of New York. The Court has held FCIA's motion in abeyance pending resolution of the motion to remand. For the reasons set forth below, the Court will now grant Gensplit's motion to remand this case to the Circuit Court of Milwaukee County.

## BACKGROUND

Gensplit is a Wisconsin corporation engaged in the business of providing financing for the export of goods from the United States. FCIA is an unincorporated association of insurance companies, its principal place of business being New York, New York. Since its inception in 1961, FCIA has acted under a series of agreements as the agent of Eximbank, an agency of the United States Government, for the purpose

of representing Eximbank's interests in connection with the issuance, administration, and servicing of export credit insurance policies.

Eximbank was created by Congress in the Export-Import Bank Act of 1945, as amended, 12 U.S.C. § 635 *et seq.* In that Act, Congress authorized Eximbank to issue federal export credit insurance and to employ insurance companies or associations thereof to act as its agent in connection with the export insurance program.

On or about June 13, 1979, FCIA issued an export insurance contract to Gensplit for the purpose of insuring Gensplit's financing of certain machinery and equipment to be exported by Link Power & Machinery Corporation of White Plains, New York, to John G. Salonikis, "VEKO S.A.," located in Athens, Greece. The value of the machinery and equipment was approximately $812,352.00. Under the contract, FCIA agreed to indemnify Gensplit for eighty percent (80%) of any and all losses incurred by it due to VEKO's failure to pay Gensplit the financed portion of the transaction, which amounted to $690,-864.00.

VEKO subsequently failed to pay a substantial portion of the purchase price financed by Gensplit, whereupon Gensplit submitted a notice of claim and proof of loss to FCIA. FCIA refused payment of Gensplit's claim. On May 14, 1985, Gensplit filed this action in state court alleging that FCIA breached the export insurance contract by refusing to indemnify Gensplit for the loss caused by VEKO.

FICA removed the case to this court on the grounds that Gensplit's claim arises under federal law, thereby according this Court original jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1337. As an additional basis for removal, FCIA asserts that it is a person acting under an officer of the United States or agency thereof and that, therefore, jurisdiction lies in this Court by virtue of 28 U.S.C. § 1442(a)(1).

Gensplit contends that this Court lacks jurisdiction over this matter because the complaint states a claim for breach of contract, which does not arise under nor is it governed by federal law. Gensplit further contends that jurisdiction does not lie in this Court pursuant to 28 U.S.C. § 1442(a)(1) because FCIA is not a "person" within the meaning of that statute. Therefore, Gensplit requests that this action be remanded back to state court and that the Court award Gensplit its costs incurred in relation to the present motion.

## II. JURISDICTION PURSUANT TO 28 U.S.C. § 1331

Section 1331 of 28 U.S.C. provides that

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

With respect to this section, the question is whether the plaintiff's claim "arises under" the Constitution or laws of the United States. FCIA argues that Gensplit's claim arises under federal law because FCIA issued the insurance policy as the agent of Eximbank as authorized by Congress under 12 U.S.C. § 635(a)(1) *et seq.* Gensplit states that its claim is a garden-variety contract action which arises under and is governed by state law.

In determining whether a particular claim arises under federal law within the meaning of § 1331, a court must look solely to the plaintiff's complaint. *K.T. Hunter v. United Van Lines,* 746 F.2d 635, 639 (9th Cir.1984); *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233 (2nd Cir.1978); *Local Division 519, Amalgamated Transit Union, AFL–CIO v. LaCrosse Municipal Transit Utility,* 445 F.Supp. 798, 801 (W.D.Wis.), *aff'd,* 585 F.2d 1340 (7th Cir.1978). Although the defendant went to great lengths in its brief to demonstrate that the Court should look beyond the complaint in this situation, it would be inappropriate to

do so unless the plaintiff has "artfully manipulated" the wording of the complaint in order to defeat removal. *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976).

In this case, the complaint clearly sets forth a breach of contract claim based on state law. Although the complaint does not mention the statutory authority by which Eximbank and its agents operate, that statute bears little if any relation to the plaintiff's cause of action. Thus, the complaint may be considered well-pled even though there is no reference to 12 U.S.C. § 635(a)(1) *et seq.*

■ FCIA's argument that Gensplit's claim arises under federal law simply because Congress created Eximbank and authorized the export insurance program constitutes a strained interpretation of § 1331. In order for a claim to "arise under" federal law, it is necessary that the complaint "establish either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420, 442 (1983); *see also, County Department of Public Welfare of Lake County v. Stanton,* 545 F.Supp. 239, 242 (N.D.Ind.1982); *Molton, Allen & Williams, Inc. v. Harris,* 436 F.Supp. 853, 857 (D.D.C.1977). In other words, a claim arises under federal law "when the action may be defeated by one construction of the law and sustained by the opposite construction." *Local Division 519,* 445 F.Supp. at 804.

Since the Court must look solely to the complaint in deciding whether the plaintiff's claim arises under federal law, any defenses raised by FCIA concerning waiver or immunity are irrelevant for the purpose of resolving this issue. Therefore, the only consideration is whether the success of Gensplit's breach of contract claim, standing alone, depends in some way upon the resolution of a substantial question of federal law. Clearly it does not. Although federal law may be invoked by way of FCIA's defense, the complaint itself, which the Court considers to be a well-pled document, sets forth a breach of contract claim based on state law. As such, the success of that claim depends upon the wording and validity of the contract in light of applicable state law. Accordingly, Gensplit's claim does not arise under federal law, and jurisdiction does not lie in this Court by reason of 28 U.S.C. § 1331.

### III. JURISDICTION PURSUANT TO 28 U.S.C. § 1337

■ The defendant's second basis for asserting that this Court has original jurisdiction over this case, and that removal is therefore proper under 28 U.S.C. § 1441, is that the plaintiff's claim arises under an act of Congress as stated in 28 U.S.C. § 1337(a). Section 1337(a) provides, in relevant part, that

(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any act of Congress regulating commerce ...

The issue with respect to § 1337(a) is very similar to the one discussed with reference to § 1331, as the "arising under" language in § 1337(a) is to be interpreted according to the same standards as the "arising under" language in § 1331. *K.T. Hunter,* 746 F.2d at 639; *First National Bank of Aberdeen v. Aberdeen National Bank,* 471 F.Supp. 460, 466 (D.S.D.1979). The Court's determination as to whether it has jurisdiction by virtue of § 1337(a) is also to be made solely on the basis of the allegations in the complaint, as that document in no way obscures the nature of the plaintiff's claim. *Long Island Railroad Company v. United Transportation Union,* 484 F.Supp. 1290, 1291 (S.D.N.Y.1980).

In view of the allegations in the complaint, the Court is convinced that the plaintiff's claim does not arise under an Act of Congress regulating commerce. Although

FCIA may operate pursuant to statutory authorization, that legislation does not serve as the foundation for the plaintiff's claim. As the court stated in *First National Bank of Aberdeen v. Aberdeen National Bank*, 471 F.Supp. at 466:

"Merely because an Act of Congress regulating commerce may be involved in the case is not enough to raise federal court jurisdiction. *Eickhof Construction Co. v. Great Northern Railway Co.*, 291 F.Supp. 44 (D.Minn.1968). The plaintiff's claim must arise under that Act in the sense that the Act supplies not only the source of the authority to establish that right, but also that it establishes the federal nature of the right."

The source of the plaintiff's claim in this instance is the insurance contract between it and FCIA; no Act of Congress has supplied the plaintiff its authority to establish its rights under the contract. Therefore, the Court finds that 28 U.S.C. § 1337 does not confer original jurisdiction over this matter to this Court, and the defendant's contentions to the contrary are rejected.

### IV. JURISDICTION PURSUANT TO 28 U.S.C. § 1442(a)(1)

■ The third and final basis upon which the defendant contends that this Court has jurisdiction over this action is that FCIA is a "person" acting under an agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1). That section provides, in relevant part, that

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . .

Gensplit disputes that FCIA is a "person" as that term is used in § 1441(a)(1).

Instead, Gensplit asserts that the term applies only to natural persons. In support of its position, Gensplit has cited a number of cases, including two involving Eximbank, where courts did not permit removal pursuant to § 1442(a)(1) by entities which were not natural persons. These cases will be addressed below.

Unlike the determinations made above with respect to § 1331 and § 1337, the Court must consider all relevant facts in the removal petition and supporting affidavits, in addition to those alleged in the complaint, when applying § 1442(a)(1) to the present situation. *O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir.1974); *State of New Jersey v. Moriarity*, 268 F.Supp. 546, 557 (D.N.J.1967). However, the facts asserted in support of removal must clearly demonstrate that jurisdiction rests in federal court, as any doubts about the propriety of removal will result in the case being remanded to state court. *Jones*, 541 F.2d at 664; *Tasner v. U.S. Industries, Inc.*, 379 F.Supp. 803, 809 (N.D.Ill.1974). The corollary to that rule is that the party who removed the action bears the burden of establishing its right to remove. *Jones*, 541 F.2d at 664.

The cases in which § 1442(a)(1) was interpreted provide no clear-cut answer as to whether the term "person" as used in that section applies to non-individuals. In *Willingham v. Morgan*, 395 U.S. 402, 406–407, 89 S.Ct. 1813, 1815–1816, 23 L.Ed.2d 396 (1969), the Supreme Court stated that § 1442(a)(1) was not to be narrowly construed, but that the statute was "broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." The issue in *Willingham*, however, was not whether the parties seeking removal were "persons", but rather whether they had acted in the course of their official duties. In fact, the parties seeking removal were the warden and chief medical officer at the United States Penitentiary at Leavenworth, Kansas, who were obviously

natural individuals and therefore "persons" under § 1442(a)(1). 395 U.S. at 403, 89 S.Ct. at 1814.

The language in *Willingham* was cited by the court in *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975), where the primary issue also was whether the defendants had acted beyond the scope of their statutory authority. 508 F.2d at 57. After citing *Willingham* and a number of other cases where removal by natural persons was allowed, however, the court concluded without discussion that the corporate defendants were "persons acting within the purview of § 1442(a)(1)." 508 F.2d at 58.

The defendant relies heavily on the *Peterson* decision to support its argument that this Court has jurisdiction over this case pursuant to § 1442(a)(1). In view of the conflicting cases cited by the plaintiff, however, the Court is not convinced that it should base its decision upon the outcome in *Peterson*, especially when the crux of that case was centered upon a different issue.

Likewise, the Court does not feel compelled to follow the holdings in the other cases cited by FCIA. In *Group Health Inc. v. Blue Cross Assn.*, 587 F.Supp. 887, 890 (S.D.N.Y.1984), the court cited *Peterson* for the proposition that corporate agents of the Department of Health and Human Services administering Medicare programs may remove an action under § 1442(a)(1). After referring to other cases which held that § 1442(a)(1) did not grant a right of removal to federal agencies, the court nonetheless concluded that "(t)he section is not by its terms limited to natural persons." *Id.*

The defendant also cited *Allen v. Allen*, 291 F.Supp. 312 (S.D.Iowa 1968), and *Kuenstler v. Occidental Life Ins. Co.*, 292 F.Supp. 532 (C.D.Cal.1968). In both of those cases, it was held that the defendants, although not natural persons, were "persons" acting under the Secretary of the Department of Health, Education, and Welfare. In *State of Texas v. National Bank of Commerce of San Antonio*, 290 F.2d 229, 231 (5th Cir.1961), also cited by the defendant, the court found that the defendant banks were acting in their official capacity as agents of the United States Government. However, the court did not specifically address the issue of whether the banks were "persons."

Balanced against the cases cited by FCIA are a number of decisions which support Gensplit's contention that the term "persons" in § 1442(a)(1) pertains only to individuals. In *Lance International, Inc. v. Aetna Casualty and Surety Co.*, 264 F.Supp. 349 (S.D.N.Y.1967), the court decided that Eximbank was not entitled to remove an action to federal court on the basis of § 1442(a)(1). "The plain language of (§ 1442(a)(1)) limits the right to remove to an 'officer' or 'person acting under him'. Nothing in the legislative history reveals that the term 'officer' was intended to include corporations or agencies as distinguished from individuals." 264 F.Supp. at 355.

Eximbank also failed in its removal attempt in *Harlem River Produce Co. v. Aetna Casualty and Surety Co.*, 257 F.Supp. 160 (S.D.N.Y.1965). In reaching its decision, the Court in *Harlem River* reviewed the congressional purpose behind § 1442(a)(1), which was "that all suits against officers of the United States Government for acts done within the ambit of their authority be tried only in courts of the United States." 257 F.Supp. at 163. In other words, Congress intended by means of § 1442(a)(1) to protect individuals employed by the government against suits brought against them in state courts for actions done in the course of their official duties; there was no evident intention to protect government agencies or other corporate entities from such suits.

The most well-reasoned discussion of the issue presently before the Court is contained in *Lowe v. Norfolk & Western Railway Co.*, 529 F.Supp. 491 (S.D.Ill.1982).

The question in *Lowe* was whether the Environmental Protection Agency ("EPA") was an "officer" or "person" within the meaning of § 1442(a)(1). In holding that the EPA was neither, the court reasoned as follows:

"The plain wording of subsection one makes it clear that removal is available to any officer of the United States or any officer of any agency of the United States. Although Monsanto and WES would not agree to this construction and would instead allow removal to any agency of the United States, the very next phrase dispels this alternative construction. The next phrase reads "or person acting under *him*." (Emphasis supplied) "Him" obviously refers directly to the officer of the United States or of the United States agency. It is highly unlikely that Congress would refer to a federal agency, in this case the EPA, as "him." Moreover, subsection (a) provides that any civil action or criminal prosecution commenced against certain following *persons*, enumerated in subsubsections (1) through (4) may be removed by *them*. Thus, the words of the statute demonstrate that it provides protection for persons, not agencies. This makes sense, since Congress has already provided ample protection against tort suits for its agencies and the entire government in the Federal Tort Claims Act, and any other claims which could be brought in state court are barred by sovereign immunity."

529 F.Supp. at 493–494. Additional cases exist which support the plaintiff's proposition that the right to remove actions by means of § 1442(a)(1) extends only to natural persons. *See, e.g., Brewer v. Department of Housing And Urban Development,* 508 F.Supp. 72 (S.D.Ohio 1980); *KCPO Employees Credit Union v. Mitchell,* 421 F.Supp. 1327 (W.D.Mo.1976).

The defendant points out, as did the court in *Peterson,* that the cases cited by the plaintiff merely hold that *federal agen-*cies have no right to remove under § 1442(a)(1). The Court fails to discern what succor the defendant obtains from that fact. Certainly, if Congress did not intend to provide a right to remove under § 1442(a)(1) to federal agencies, it would have no cause to do so for private, non-individual agents of federal agencies. What logic lies in the defendant's argument?

The Court believes that the better reasoned approach was taken by those courts which denied the right to remove under § 1442(a)(1) to any but individual defendants. Statutes ordinarily are to be construed according to the normal meanings of the words contained therein. *Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). If Congress had intended to extend coverage under § 1442(a)(1) to other than natural persons, it could easily have done so by stating as much in the language of the statute. Moreover, unlike certain situations where courts employed strained interpretations of § 1442(a)(1) to maintain their jurisdiction, this Court sees no overriding federal interest in this action such that an overly broad interpretation of § 1442(a)(1) might be justified. This case involves a simple claim for breach of contract, and it belongs in state court where it was originally brought. The defendant has not sustained its burden of establishing its right to remove under § 1442(a)(1), and the Court hereby finds that it lacks jurisdiction over this action under that section.

## V. COSTS

The plaintiff has asked that the Court award it the costs incurred by it in relation to this motion should the matter be remanded to state court. The defendant contends that it removed the action in good faith and that, in the event the case is remanded, costs should not be awarded.

The Court believes there was little doubt that § 1331 and § 1337 offered no reasonable basis for removal of this action. On the other hand, the conflicting case law

concerning the propriety of removal under § 1442(a)(1) presented a far more valid issue, albeit one that was not resolved in the defendant's favor.

■ Accordingly, since the defendant removed this action based in part on ill-founded contentions which the plaintiff was forced to refute, the Court will and hereby does order that the $250.00 bond posted by the defendant with the Clerk of Court be forfeited to the plaintiff. Further costs will not be awarded in this instance. However, the defendant is now on notice of this Court's decision with respect to § 1442(a)(1), and any future attempts to remove similar cases under that section, in the absence of subsequent controlling decisions to the contrary, will result in the award of full costs to the party contesting removal.

### CONCLUSION

In summary, the Court hereby *GRANTS* the plaintiff's motion to remand this action to the Circuit Court for Milwaukee County, State of Wisconsin. Defendant's motion to transfer this case to the United States District Court for the Southern District of New York is moot and therefore *DENIED.* The Court also orders that the removal bond posted by the defendant in the amount of $250.00 be forfeited to the plaintiff.